# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LADONNA S WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22-CV-00849-RK |
| ) | |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION; ) | |
| ) | |
| ) | |
| Defendant. | |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

### Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion[1]

By way of overview, the ALJ found that Plaintiff has the following severe impairments: bilateral foot osteoarthritis, nondisplaced partial-thickness longitudinal split tear of the peroneus brevis tendon, right shoulder partial rotator cuff tear, right shoulder impingement syndrome, obesity, right carpal tunnel syndrome, De Quervain's Tenosynovitis, fibromyalgia, migraines, asthma and oral allergies, and obstructive sleep apnea. The ALJ also determined that Plaintiff has the following non-severe impairments: varicose veins, sphincter of Oddi dysfunction, chronic diarrhea, major depressive disorder, bipolar disorder, generalized anxiety disorder, and attention-deficit hyperactivity disorder. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite her limitations, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and carry five pounds frequently and ten pounds occasionally. In an eight-hour workday with normal breaks, she can sit about six hours and stand and/or walk about two hours. She should never climb ladders, ropes, or scaffolds, and never work at unprotected heights or around dangerous machinery. She should not work in high concentrations of dust, fumes, gases, or similar pulmonary irritants, or in hot temperature extremes or extremes of high humidity. She should not work around loud noises or bright lights, although typical indoor lighting is permissible. She should not work around extreme vibration. She can occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch, and crawl. She can frequently reach in all directions with the right (dominant) upper extremity. She can frequently handle and finger with the right (dominant) hand. The ALJ found that Plaintiff was able to perform past relevant work and made the alternative finding that she could perform other work.

On appeal, Plaintiff claims (1) the ALJ did not properly consider her fibromyalgia; (2) there is not substantial evidence to support the evaluation of the medical opinion evidence; (3) there is not substantial evidence to support the evaluation of the consistency of Plaintiff's claims; and (4)

---

[1] On review of the record, the Government's briefing is persuasive. Portions are incorporated without further reference.

there is not substantial evidence to support the conclusion that Plaintiff could return to her past relevant work.

### Point I: the ALJ properly considered Plaintiff's fibromyalgia.

In her first point, Plaintiff claims the ALJ erred in not considering Social Security Ruling ("SSR") 12-2p regarding fibromyalgia. Plaintiff's claim is essentially a challenge to the RFC.

A claimant's RFC is what the person can still do despite limitations. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (quoting 42 U.S.C. § 404.1545(a)(1)). The RFC determination should be "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). An ALJ is not required to list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." *Wilfong v. Berryhill*, No. 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (Sept. 19, 2018).

Plaintiff's challenge concerns SSR 12-2p, which explains how the agency evaluates claims involving fibromyalgia. There is no requirement, however, that the ALJ cite SSR 12-2p as long as he or she evaluates fibromyalgia consistent with agency policy. Here, the ALJ complied with agency policy. At step two of the sequential evaluation process, the ALJ found Plaintiff's severe impairments included fibromyalgia (Tr. 14.) The ALJ also considered whether Plaintiff's fibromyalgia equaled Listing 14.06 at step three as required by agency policy (Tr. 18), and Plaintiff does not challenge the ALJ's conclusion that her impairments do not equal the Listing. The ALJ's decision indicates he considered Plaintiff's fibromyalgia in formulating the RFC, specifically noting that the record did not appear to contain complete fibromyalgia tender point results.[2]

---

[2] The ALJ's fibromyalgia discussion at step three was extensive:

> Although there is no specific Medical Listing for fibromyalgia, this may be evaluated under Medical Listing 14.06 [114.06], undifferentiated and mixed connective tissue disease. Here, the record lacks evidence of involvement of two or more organs/body systems, with one of the organs/body systems involved to at least a moderate level of severity, and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). In addition, the record lacks evidence of repeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) with one of the following at the marked level: limitation of activities of daily living,

Even if the ALJ did err in not including in the decision a lengthy discussion of SSR 12-2p, substantial evidence supports the ALJ's RFC. The ALJ noted other factors are inconsistent with Plaintiff's allegations regarding the severity of her impairments and accompanying symptoms. The ALJ also found that Plaintiff's statements concerning severity are not consistent with her activities of daily living (ADLs). In that vein, the Court notes also that an ALJ must give reasons if he or she does not fully credit the claimant's testimony. More specifically, when evaluating a plaintiff's subjective complaints, an ALJ "must give full consideration to all of the evidence presented relating to subjective complaints . . . [including]: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledges and examines those considerations before discounting the [plaintiff's] subjective complaints." *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (cleaned up). The ALJ may discredit subjective complaints if they are "inconsistent with the evidence on the record as a whole" but must "make an express credibility determination detailing his reasons for discrediting the testimony." *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). In reviewing the ALJ's decision, this Court "will not substitute its opinion for the ALJ's, who is in the better position to gauge credibility and resolve conflicts in the evidence." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Here, the ALJ noted that Plaintiff's ADLs include that she can live with others, help take care of her daughters, manage her personal care, prepare meals, clean, wash dishes, fold laundry, mop, vacuum, go outside, leave the house alone, walk, drive, ride in a car, shop, pay bills, count change, handle a savings account, use a checkbook, read, write, watch television, spend time with others, use a computer, and talk on the telephone. (Tr. 21-22.) The ALJ highlighted that Susan Gates, PT, noted on March 12, 2020, that Plaintiff had made significant gain in her ability to lift for work activities. (Tr. 22.) She found that "[m]any of the skills necessary to perform these

---

limitation in maintaining social functioning, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(Tr. 18.)

activities are similar to those required for full-time competitive employment. (*Id*.) Hence, the ALJ found Plaintiff's range of activity not consistent with a finding of disability. (*Id*.)

In addition to ADLs undermining a claim that fibromyalgia is disabling, the ALJ noted that Plaintiff was not always compliant with her treatment and that many of her symptoms improve with treatment. (*Id*.) For example, Plaintiff was noncompliant with physical therapy, and according to her primary care provider, Plaintiff missed a lot of appointments. (Tr. 322, 328.) The ALJ noted Plaintiff reported on January 6, 2022, that she was "handling the current situations well most of the time and getting more regular on her medications, her symptoms are better when she is regular in having her medications [sic]." (*Id*.) That evidence also was not consistent with a finding of disability. *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Point I is denied.

### Point II: Substantial Evidence supports the Evaluation of the Medical Opinion Evidence

Plaintiff next argues that the ALJ failed to properly evaluate the prior administrative medical findings of the State agency physicians. State agency medical and psychological consultants are highly qualified and are experts in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1); *see also Briegel v. Comm'r of Soc. Sec.*, 4:20-00291-CV-RK, 2021 WL 2870641, at *3 (W.D. Mo. July 8, 2021) (citing 20 C.F.R. §§ 404.1520c, 416.920c). Under the revised medical evidence regulations, the ALJ was required to evaluate the supportability and consistency of the prior administrative medical findings and determine their persuasiveness. The ALJ fulfilled those requirements, and the evaluation is supported by substantial evidence.

Because Plaintiff applied for benefits in December 2020, the ALJ properly applied the revised regulations governing the evaluation of opinion evidence. *See* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). The new regulations require the ALJ to explain how persuasive an opinion or prior administrative medical finding was and explain how the supportability and consistency factors were considered. *See* 20 C.F.R. § 404.1520c. The "supportability" factor refers to the support provided by the source issuing the opinion, as it is defined in the regulations as relevant objective evidence and explanations "provided by a medical source . . . to support his or her medical opinion." 20 C.F.R § 404.1520c(c)(1). "Consistency"

5

refers to a comparison with other items in the record, as it is defined as the consideration of "evidence from other medical sources and nonmedical sources." 20 C.F.R § 404.1520c(c)(2). The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the agency, i.e. the ALJ, finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3).

State agency medical consultant Dennis McGraw, M.D., found on January 4, 2021, at the initial level that Plaintiff could function at the light exertion level with certain postural and environmental limitations. (Tr. 71-73.) State agency medical consultant Harry Cole, M.D., made similar findings on May 11, 2021, at the reconsideration level. (Tr. 83-84.) However, Dr. Cole also found that Plaintiff could frequently reach in front, laterally, and overhead. (Tr. 84.) The ALJ recognized that the State agency physicians were acceptable medical sources and highly qualified. (Tr. 22.)

The ALJ also observed that the State agency prior administrative medical findings were partially consistent with the record. (Tr. 22.) Specifically, the physicians' findings that Plaintiff was capable of lifting, carrying, pushing, pulling, sitting, standing, and walking at the light exertion level was inconsistent with her medical imaging, physical status examination results, treatment history, and ADLs. (Tr. 22.) The ALJ found Plaintiff was more limited in that she could perform only sedentary work. (Tr. 18.) However, the finding that Plaintiff should avoid concentrated exposure to pulmonary irritants was consistent with her allergies, asthma, and accompanying symptoms. (Tr. 22.) The ALJ noted that the State agency physicians supported their findings with detailed explanations citing to objective evidence. (Tr. 22-23.) Because the doctors supported their findings and the findings were partially consistent with the record, the ALJ concluded the prior administrative medical findings were persuasive. (Tr. 23.)

State agency psychological consultant Steven Akeson, Psy.D., found on May 11, 2021, that Plaintiff suffered from non-severe "Depressive, Bipolar and Related Disorders." (Tr. 23, 82.) Dr. Akeson also found that Plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. (Tr. 23, 82.) In concluding that Dr. Akeson's prior administrative medical findings were persuasive, the ALJ found they were consistent with the record and supported with a detailed explanation. (Tr. 23.) For example, on

6

January 24, 2019, Plaintiff had normal judgment and insight, intact memory, and appropriate mood and affect. (Tr. 963.) In March 2019, Plaintiff was described as having minimal depression. (Tr. 855.) In November 2020, Plaintiff reported no anxiety or depression, and her depression screening score was zero. (Tr. 800.) In September 2021, Plaintiff had an appropriate mood and affect, normal language, and normal fund of knowledge. (Tr. 1164.) The following month, Plaintiff was cooperative with intact memory and fair insight and judgment. (Tr. 1283.) Because Dr. Akeson's prior administrative medical findings were both supported by a detailed explanation and consistent with the record as a whole, the ALJ properly found them persuasive. (Tr. 23.)[3]

Plaintiff next argues the ALJ failed to properly evaluate Dr. Moore's opinion. On July 1, 2021, Neal Moore, D.O., completed a form titled "Patient Limitations & Abilities Assessment." (Tr. 23-24, 905-08.) Dr. Moore opined that Plaintiff could: (1) occasionally lift 10 pounds; (2) sit and stand and/or walk for less than two hours in an eight-hour workday; (3) use her hands 10 percent of an eight-hour workday; (4) bend and twist 20 percent of an eight-hour workday; (5) never crawl, kneel, or climb; (6) occasionally bend, squat, stoop, crouch, reach, and balance; and (7) never tolerate exposure to a variety of environmental conditions. (Tr. 23-24, 905-06.) Dr. Moore opined similar limitations in a February 22, 2022 form titled "Patient Limitations & Abilities Assessment." (Tr. 23-24, 1369-72.)

The ALJ recognized Dr. Moore as a highly qualified, acceptable medical source. (Tr. 23-24.) However, Dr. Moore's opinions were inconsistent with the record. (Tr. 23-24.) For example, Dr. Moore's opinion that Plaintiff could use her hands only 10 percent of an eight-hour workday is inconsistent with examination results, treatment history, and her ADLs. (Tr. 23-24.) Following carpal tunnel release surgery, Plaintiff's pain and numbness decreased, and she exhibited good range of motion and good strength. (Tr. 674.) The ALJ also noted that Dr. Moore did not provide supporting explanations for his opinions, noting that they were little more than checklist forms. (Tr. 23-24.) *See Pierce v. Kijakazi*, No. 20-05073-CV-SW-MDH-SSA, 2022 WL 551135, at *4 (W.D. Mo. Feb. 23, 2022) ("A bare-bones form, void of any narrative explanation or objective medical findings, is not well-supported, and therefore, appropriately found to be less persuasive."). The ALJ did not err in finding Dr. Moore's opinion unpersuasive. (Tr. 23-24.)

---

[3] Some of the limitations provided in the ALJ's RFC were nonetheless significantly more restrictive than the consultant's.

An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, an ALJ may properly develop an RFC based on all of the evidence. *Lockwood v. Colvin*, 627 F. App'x 575, 576 (8th Cir. 2015). "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." *Wilfong*, 2018 WL 4489453, at *4. As noted above, the ALJ may not have "linked [his] analysis to each particular RFC limitation, but the totality of [his] analysis makes clear [he] followed the evidentiary pathway set forth in SSR 96-8p." *Id.* at *4.

Point II is denied.

### Point III: The ALJ Properly evaluated the consistency of Plaintiff's allegations

Plaintiff argues the ALJ embellished her activities of daily living in finding she was not disabled. As an initial matter, Plaintiff's argument ignores the other factors the ALJ cited in finding her allegations of disability were not consistent with the record as a whole. For example, despite Plaintiff's ankle injury, examinations showed steady gait, full or near full range of motion, full strength, and intact sensation. (Tr. 20, 525, 963, 1164, 1375.) Following her carpal tunnel surgery, Plaintiff had decreased pain and numbness, good range of motion, and good strength. (Tr. 674.) *See Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (allegations of disability that are inconsistent with the medical evidence weigh against the consistency of the claimant's allegations).

Additionally, as discussed above, the ALJ noted Plaintiff did not always comply with medication treatment or recommendations and that when she was compliant with treatment, her conditions responded well. (Tr. 22). Also, as noted above, in addition to all of those factors, the ALJ properly considered Plaintiff's ADLs as one factor in evaluating the consistency of her subjective complaints. (Tr. 21-22.) While these activities alone are not enough, when considered with the other factors, they provide additional support for the conclusion that Plaintiff could perform a reduced range of sedentary work.

Point III is denied.

### Point IV: Substantial evidence supports finding that Plaintiff could perform past work

The vocational expert's testimony supported the ALJ's determination that Plaintiff was not disabled. Asked a hypothetical question that set forth Plaintiff's limitations in a manner consistent

with the ALJ's eventual findings concerning Plaintiff's condition and functional limitations, the vocational expert testified that Plaintiff could perform her past relevant work as a loan clerk, as well as other work such as telephone quotation clerk, document preparer, and order clerk. (Tr. 25-26, 58-60.) This testimony constitutes substantial evidence to support the ALJ's decision that Plaintiff could perform her past relevant work and other work.

Plaintiff argues that the hypothetical question to the vocational expert is not supported, and therefore, the vocational expert's testimony is not substantial evidence supporting the decision. As long as the hypothetical question is consistent with a supported RFC, the ALJ may rely on the vocational expert testimony. *See Courtney v. Berryhill*, 894 F.3d 1000, 1004 (8th Cir. 2018) (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)) ("We have consistently held that if 'substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony.'"). As demonstrated above, the ALJ properly considered Plaintiff's impairments, the medical opinion evidence, and Plaintiff's subjective complaints in finding Plaintiff capable of a reduced range of sedentary work.

"An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9p, *available at* 1996 WL 374185, at *1, *3 (full range of sedentary work involves: lifting no more than 10 pounds at a time; occasionally lifting/carrying articles like docket files, ledgers, and small tools; walking/standing for generally no more than about two hours; and sitting for about six hours). In this case, the ALJ appropriately found Plaintiff's RFC fell between medical opinions indicating she could perform light work and opinions that she could not perform full-time work. (Tr. 71-73, 83-84, 905-08, 1369-72.) *See Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (ALJ "carefully considered both physicians' opinion[s] and determined [the claimant's] RFC lay somewhere between his treating physician's conclusion that he could perform only sedentary work and the consulting physician's conclusion that he could perform medium work."). "An ALJ must include 'only those impairments and limitations he found to be supported by the evidence as a whole in his hypothetical to the vocational expert.'" *Nash v. Comm'r of Soc. Sec.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011)). Substantial evidence supports the RFC for a reduced range of sedentary work. The hypothetical question to the vocational expert was consistent with the RFC, and the ALJ appropriately relied on the vocational expert's testimony in finding Plaintiff was not disabled.

Point IV is denied.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision for the reasons set forth in the Commissioner's brief.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

s/ Roseann A. Ketchmark<br>
ROSEANN A. KETCHMARK, JUDGE<br>
UNITED STATES DISTRICT COURT

DATED: February 27, 2024